## Chapman *v*. Champion.

### In the Court below,

EPAPHRODITUS CHAMPION, *Plaintiff ;* JABEZ CHAPMAN, *Defendant.*

THIS action was founded on a written agreement, bearing date the 4th of August, 1797, by which the defendant promised the plaintiff, that he should be paid the balance, or balances, which should be found due to him, from *Selden, John,* and *Joseph Chapman,* sons of the defendant, or either of them, in consequence of their dealings and transactions previous to the date of the writing. It was stated in the declaration, that the plaintiff, on the first of May, 1795, entered into a mercantile copartnership with *John Chapman,* under the firm of *John Chapman* & Co., which continued till the 26th of January, 1799. It was further alleged, that " there was due, coming and owing " to the plaintiff, from said *John Chapman,* in consequence " of the dealings and transactions with him, in their said " copartnership of *John Chapman* & Co., previous to said " 4th day of August, 1797, 6,000 dollars, as a balance of " their said accounts ;" and that, " on the 3d day of August, " 1799, he exhibited to the defendant the accounts and bal- " ances aforesaid, and demanded of him payment of the " sums owing to him from said *John* as aforesaid."

On trial to the jury, on the plea of *non-assumpsit,* the plaintiff offered to prove, that the commission of bankrupt had been issued against *John Chapman ;* that he had been duly declared a bankrupt ; that the commissioners and the plaintiff agreed upon and appointed arbitrators " for " the purpose of settling a certain difference and dispute " arising between the assignees of the bankrupt's estate " and *Epahroditus Champion ;* and that the arbitrators made their award, by which, after reciting that they were

*In an action brought by A. against B. on a written agreement of B. to pay to A. such sum as should be found due to A. from C., at the date of the writing, an award between A. and the assignees of C. (he having become bankrupt,) finding a balance due from C. to A., at a different time, is not admissible evidence.*

1805.

CHAPMAN
*v.*
CHAMPION

appointed as aforesaid, " to ascertain and award, whether " any, and what sum was due from said *John Chap-* " *man* on the day of his bankruptcy, to said *Champion*," they found and awarded, that " on the 8th day of May, 1802, " there was, and still is, due from said *John Chapman* to " said *Champion*, the sum of 5,751 dollars, and 19 cents." It was further found by the award, that, " on the 8th day " of June, 1799, Mr. *Champion* was charged on the books " of Messrs. *John Chapman* & Co. with the sum of 2,000*l.* " for the amount of a debt due from *Joseph Chapman* & Co. " to *John Chapman* & Co., and by the latter assigned to " *Champion ;*" and " that *Champion* was a partner interest- " ed, in the amount of one equal third, in the house of *John* " *Chapman* & Co., but it appearing, that the assignment of " that debt was not received in payment, and also that no- " thing had been received by virtue of it, we have credited " Mr. *Champion*, to countervail the previous charge, with " two thirds of the amount of that debt, and with interest on " the two thirds, from the 8th of June, 1799, to the 8th of " May, 1802, amounting to 3,916 dollars and 67 cents, " which sum is included in the sum above awarded. The arbitrators further found, that " said sum of 3916 " dollars and 67 cents, and more, became and is due " to the said *Epaphroditus Champion*, from the said *John* " *Chapman*, in consequence of advances made by *John* " *Chapman* & Co., to *Joseph Chapman* & Co., on and previ- " ous to the 24th day of June, 1797, of which two firms, of " *John Chapman* & Co., and *Joseph Chapman* & Co. *John* " *Chapman* was a partner."

The plaintiff further offered to produce in evidence the books of *John Chapman* & Co., and to go into the particular items, to shew, that the sum awarded as above stated, was in consequence of dealings and transactions between *John Chapman* and the plaintiff, prior to the 4th day of August, 1797.

To the admission of this evidence the defendant objected;

and, on the admission thereof by the Court, filed his bill of exceptions.

There was a motion in arrest, for the insufficiency of the declaration ; and judgment, that the same was sufficient.

The errors assigned were, 1. as to the sufficiency of the declaration ; 2. as to the admission of the award ; and 3. as to the admission of the books.

*Ingersoll*, and *Gould*, for the plaintiff in error.

The judgment of the Superior Court is erroneous, we conceive, on two grounds : First, that the declaration is ill ; and, secondly, that the evidence stated in the bill of exceptions, was inadmissible.

1. The action is founded on a written agreement, by which *Jabez Chapman*, the defendant below, bound himself to pay to *E. Champion* such sums of money, as should be " found" due to *Champion*, from *John*, *Joseph* and *Selden Chapman*, or either of them, on the fourth of August, 1797 : And the breach assigned is the non-payment of 6,000 dollars, alleged to have been due from *John* on that day. But the obligation, created by the contract, in relation to the debt of *John*, extended no farther than to such balance, as should be *found*, before action brought against *Jabez*, to have been due on the fourth of August, 1797 ; which balance could no otherwise be *found*, within the meaning of the contract, than by an amicable adjustment of accounts, or a judical decision, *between Champion and John Chapman.* This construction is agreeable, not only to the literal import of the instrument, but to the obvious intention of the parties, as inferrible from the nature of the agreement itself. For it cannot be supposed, that *Jabez C.* intended to assume upon *himself* the liquidation of accounts, which might prove to be long, various and intricate, raised between third persons, and to which

he must be presumed to have been a stranger. All instruments are to be literally construed, unless there appears, upon the face of them, something which evinces an intent, *variant* from the strict import of the terms used. In the present case, the nature of the contract furnishes an obvious presumption in *favour* of a literal construction.

If it should be objected, that according to this construction, agreements, like that in question, may be easily evaded ; since a debtor, standing in the predicament of *John C.* may, by refusing to join in an amicable adjustment of the accounts, prevent such a finding of the balance, as, we contend, is necessary ; the answer is, that the end may be attained by a *suit* against the debtor. *Champion* might, in this case, have sued *John C.* for the balance due, on the fourth of August, 1797, and thus have compelled such a liquidation of the accounts, as would satisfy the terms of the contract. But at any rate, *Jabez C.* does not, by his agreement, become the *insurer* of such a finding. The risk, if there be any, is not *his*, but *Champion's*.

The contract, then, was to pay, not the sum *actually* due, on the fourth of August ; but the balance, *found* to be due on that day. The plaintiff's right of action could not, therefore, accrue, but upon a *finding* of the balance, in one of the ways already mentioned. But the declaration contains no averment of any balance *found* to be due, on that day, or at any other time, before the action was brought. It, therefore, shews no cause of action.

But admitting, that a right of action might accrue, without a balance previously found ; yet the declaration is ill upon another ground : It contains no allegation of a demand made, or notice given, of the balance *actually* due, on the fourth of August, 1797. And it is a universal rule in pleading, that when a right of action is to accrue upon any future fact or event, supposed to be within the private knowledge of the plaintiff, but to which the defendant is presumed to be a stranger, (and such, in common presumption,

every man is to the accounts of third persons) the declaration must allege special notice to the defendant. (*a*) It is, indeed, averred, in the present case, that the plaintiff did demand of the defendant 6,000 dollars, as the balance due; but it appears from the verdict, which is for 4,840 dollars only, that the former sum was *not* the balance *actually* due: And it is self-evident, that, if the plaintiff, in a case like this, is bound to give notice of the balance due; he must, at his peril, give notice of the *true* balance. He can, surely, acquire no right, by giving false information, or by making an unfounded demand; of course, the defendant incurs no liability, in consequence of either. Indeed, if the defendant below became liable to an action, in consequence of the demand alleged; it is perfectly clear, that he must have been bound to pay the *whole* sum demanded: But this, as appears upon the face of the record, greatly exceeded the sum *really* due.

It is no answer to these exceptions, that they are taken after verdict: For a finding of the balance, before action brought, is, according to our construction of the contract, as is the giving of notice to the defendant, of the balance actually due, according to the other, in nature of an act or condition *precedent* to a right of action. And whenever performance of such an act or condition is not averred in the declaration, the defect is clearly incurable. (*b*) The rule as to presumptions in aid of the pleadings after verdict is this: That no fact, not alleged, can be presumed, unless it is *necessarily implied* in those, which are expressly alleged and found; or, in other words, unless the proof of those, which are alleged and found, must necessarily have *involved* the proof of that, which is omitted. This, I conceive, is the precise extent of the rule, as explained by BULLER, J. in

(*a*) *Doug.* 654, *Rushton* v. *Aspinall.* 5 *Com. Dig. Tit. Pleader,* C. 73.

(*b*) 7 *Co.* 10 *b. Ughtred's case.* 1 *Term Rep.* 645, *Hotham* v. *The East India Company.* 7 *Term Rep.* 125, *Morton* v. *Lamb.*

P

*Spieres* v. *Parker*, (c) and by Lord MANSFIELD in *Rushton* v. *Aspinall.* (d) The same doctrine is recognized, 4 *Term Rep.* 472. *Bull. N. P.* 320,1. But in the present case, the declaration contains no averment, which *implies*, or from which it is possible to *infer*, either that the balance, due in August, 1797, was *found*, or that notice of the *true* balance was given, before the action was brought. Neither of those facts, then, can be presumed. The consequence is, that the declaration is not aided by the verdict.

II. As to the evidence, stated in the bill of exceptions.—

1. The award was, in all its parts, inadmissible, whether our construction of the agreement, or that, which we oppose, is the correct one. According to the former, there should have been a finding, before action brought, of the balance, due on the fourth of August, 1797 : But the award was not made till *after* the commencement of the suit ; and the only material fact regularly found by it, is the balance due on the 8th of May, 1802. It does, indeed, import a finding of the balance due in 1797 ; but this is altogether extra-judicial and void : For it was not within the scope of the inquiry, submitted to the arbitrators ; that inquiry being merely, what was the balance due from *John*, at the *time of his bankruptcy*, in May, 1802 ? The effect of the award, in this point of view, is exactly similar, in principle, to that of a finding by verdict, on the plea of *nil debet*, that the defendant is indebted in such a sum, *and that a certain part of that sum was due five years ago :* In which case, the latter part of the verdict is mere surplusage, and of no effect whatever. (e) The arbitrators, then could not bind the parties, by such a finding.

But if, as the defendant in error contends, the agreement

(c) 1 *Term Rep.* 145.
(d) *Doug.* 658.
(e) 6 *Co.* 46, *Downald's Case. Cro. Jac.* 407, *Sidenham* v. *Man.* 2 *Roll. Abr.* 717. *pl.* 4.

was to pay the sum actually due, and does not contemplate a *finding* of the balance, before action brought ; still the award was inadmissible. For upon this supposition, *Jabez C.* did *not*, by his contract, refer the liquidation of the accounts to *Champion and John C.* or to any other person or persons, acting for or under them. It is obvious, then, that, upon the supposition now assumed, the arbitrators could not *bind Jabez*, by *any* finding whatever. Of course, the award was inadmissible, as being *res inter alios acta.*

2. According to our construction of the contract, the books of *John C. & Co.* were also inadmissible ; since they shewed no balance *found*, within the meaning of the agreement.

But, at any rate, if the books were rightly admitted, the award should have been rejected ; and if the award was admissible, the books were clearly not so. That the admission of *both* should have been right, is impossible. For, if the agreement was to pay what should *be* due, on the 4th of August, 1797, and not the balance, which, upon an adjustment, in one of the modes already mentioned, should be *found* due ; the award was inadmissible, for the reason already given, viz. that it is *res inter alios acta.* And if, on the other hand, the contract was to pay the balance, which should be *found* due, upon an adjustment, either amicable or coercive, between *Champion* and *John C.* the books were already irrelevant ; since they contained no balance *thus found.* Upon either supposition, therefore, the judgment is erroneous.

*Daggett*, for the defendant in error.

The errors assigned arise out of the declaration, and the bill of exceptions.

The declaration is said to be insufficient, First, because there is no allegation that a balance was *found* due :

1805.

CHAPMAN
*v.*
CHAMPION

Secondly, because there was no allegation of a *demand made* of a balance *found due.*

These objections are both resolvable into one, and are to be decided by giving a just construction to the writing, on which the suit is brought. The promise of the defendant *Chapman,* as contained in the writing, is, that the balance, which *shall be found* due, &c. shall be paid. The allegation in the declaration is, that there was *due, coming and owing,* &c. and that said balance was exhibited to the defendant, and payment demanded, &c.

The first answer to this objection is, that it comes *too late* after verdict. The rule, as laid down in *Rushton* v. *Aspinall,* (*f*) I admit, viz. That when the plaintiff *totally* omits to state his title, or cause of action, a verdict will not cure the defect; but when the title or cause of *action* is *defectively* set forth, the Court will presume those facts proved on the trial, which were necessary to warrant a recovery. Under the operation of this rule, this declaration certainly must be holden good *after verdict.*—To make the most of this objection, the ground of recovery is only *defectively* alleged, that is, there is less certainty, than there ought to have been, as to the *balance.* But the rule of our Courts, as appears in *Church* v. *Town of Norwich,* (*g*) is still more liberal; and in a case decided by this Honourable Court, in June, 1803, *Spencer* v. *Overton,* (*h*) the doctrine is carried still further. There, in an action of *indebitatus assumpsit* for money laid out and expended, for the support of a pauper, stating *particularly* the grounds of action, there was an omission to allege notice to the defendant. The Superior Court adjudged that declaration ill after verdict, resting on the authority in *Douglass* above cited.—This Court reversed the judgment, on the ground that the defect was aided by verdict.

(*f*) *Doug.* 683.                    (*g*) *Kirby* 148.
(*h*) *Ante.* vol. 1. p. 183.

**2.** This declaration would be good even on demurrer. The sound construction of the promise is, that the defendant would pay such sum as *was due*, or *might appear to be due*. It is here worthy of notice, that when this promise was made, *John Chapman*, for payment of whose debt, *Jabez Chapman* is now challenged, was in copartnership with the plaintiff *Epaphroditus Champion*. The word *found*, was doubtless used with reference to a further existence of that copartnership. It was not the intention of the parties, that if the balance due, on the 4th of August, 1797, should be diminished in the course of the future business of this copartnership, that *Jabez Chapman* should be liable for more than might be *then* actually due ; nor, in case of a further indebtedness, that he should be subjected thereto. The engagement, then, on the part of the defendant, was *absolute*, to pay such sums as might be due to the plaintiff, on account of transactions previous to the 4th of August, 1797. The contract being absolute, it was surely unnecessary to make an allegation of any demand. That this is the true construction, is clear from the case of *Bulkley* v. *Elderkin*. (*i*) It is also to be argued from the mischief attending any other construction. If the promise was conditional, and to be obligatory only when a balance was *found* due in the sum contended for, then the defendant could not be sued till *John Chapman* had, either by process of law, or voluntarily, settled the account, and ascertained the balance. He might, and as his father would be thereby rendered liable, probably would have refused to make any such adjustment. In that event, a process of law must have been resorted to. This he might, and probably, for the reason above, would have avoided. If the balance, in either of the methods aforesaid, had been ascertained, still the defendant might have controverted it.—All this shews, that the form of action now adopted is the only proper form.

**3.** It is said, this award was incompetent testimony, because the defendant was not a party to it.

(*i*) *Kirby* 188.

By this award, the balance due from *John Chapman* to the plaintiff in 1802, is ascertained. It is ascertained agreeably to the provisions of the bankrupt law of the United States.—I do not urge it, as conclusive proof of the sum due on the 4th of August, 1797, but as the partnership continued after *that time*, it is clear, that justice between the parties requires an ulterior examination of their accounts. This examination has been had, in a legal manner, in due course of law, and was proper to shew the final adjustment of accounts between the parties. It is said, that this is *res inter alios acta*, and therefore not binding ;—so would have been any adjustment of accounts, which could have been made between the parties ; and yet, it was insisted in another part of the argument, that an allegation of such an adjustment ought to have appeared on the declaration. A. becomes bound to pay to B. what C. owes him. In a suit on this contract, would not a judgment of Court in favour of B. against C. ascertaining the balance, be competent testimony ? Is not the judgment against the principal received in evidence, in a suit against the bail ? Is not the indorser of a note liable for the damages assessed against the promisor ?

4. It is objected, that the Court below erred, in admitting the books of accounts of the company of *E. Champion*, and *John Chapman*, to prove the balance due on the 4th of August, 1797. It is, indeed, difficult to know what proof will suit the defendant.—These books, from the nature of the case, must exhibit the situation of these merchants in company, towards each other, and towards every body else. The indebtedness of *Chapman* to *Champion*, could not be ascertained without them. To say, that the defendant shall not be bound by these books, is to liberate him from his contract, or, at least, to prohibit the plaintiff from using, as evidence against him, the most important and pertinent testimony, of which the case admits.

The testimony then was proper, and the declaration sufficient ; and, of course, the judgment ought to be established.

BY THE COURT, the judgment was reversed, AUSTIN, ALLEN, and EDMOND, *Asts*. dissenting.

The judgment of this Court is founded on that part of the record, which is embraced by the bill of exceptions. In the opinion of this Court, the award was not admissible in evidence, on the trial of the issue under consideration. The award is *res inter alios acta*. If fairly made, it may, and ought to conclude the creditors of *John Chapman*, on the principle that it is their act. It is, however, to be observed, that a part of the award is *extra-judicial*, and could have no legal effect upon the creditors. The only question submitted, was the amount of the balance due and owing from *John Chapman*, at the time of the bankruptcy. The finding of the balance due and owing, on the 24th of June, 1797, was not in pursuance of the submission; and even if the award was, in other respects, to have been admitted; such finding was not, in the judgment of this Court, admissible, on the issue under consideration.

The writing declared upon appears to this Court, to be evidence of a direct undertaking, on the part of *Jabez Chapman*, and, in construction of law, binds him to pay the balance, which was due and owing from *John Chapman*, for dealings and transactions prior to the date of the writing. *Jabez Chapman* was not party or privy to the submission; nor can the award be said to be his act, either expressly or constructively. Such a construction, with a view to ascertain the extent of his liability, would be at variance with the true intent and meaning of the undertaking.

The award in question could not, in the judgment of this Court, be so construed, as to operate either to estop *Jabez Chapman*, in his defence against the claim of *Epaphroditus Champion*, or to evidence the amount of the balance, which he had assumed to pay.